**Affirmed as Modified; Opinion Filed May 6, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00727-CV

### BRIAN E. VODICKA, Appellant
### V.
### MICHAEL B. TOBOLOWSKY, EXECUTOR OF THE ESTATE OF IRA E. TOBOLOWSKY, Appellee

### On Appeal from the 14th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-15-08135

## MEMORANDUM OPINION

Before Justices Myers, Whitehill, and Carlyle
Opinion by Justice Carlyle

Brian E. Vodicka appeals the trial court's $5,500,000.00 damage award against him in this

defamation case. In six issues, Vodicka contends the evidence is legally insufficient to support the

judgment and the trial court erred by dismissing his counterclaims, failing to hear his Texas

Citizens Participation Act dismissal motion within the required time period, denying his recusal

request, and awarding excessive exemplary damages. We modify the judgment to reduce the

amount of exemplary damages from $5,000,000.00 to $500,000.00 and otherwise affirm.

# I. Background

Ira E. Tobolowsky[1] filed this suit in July 2015 against Vodicka and Steven B. Aubrey ("Defendants"). The live petition alleged (1) beginning in 2013, Aubrey's mother, Betsy Aubrey, retained Tobolowsky as her attorney in lawsuits Defendants filed against her regarding inherited assets she controlled, and (2) due to "lack of success" in those lawsuits, Defendants "intentionally, maliciously, and willfully made and published to third parties" false, defamatory per se statements about Tobolowsky that attacked his "reputation, honesty, integrity, and practice of law" in order to "punish, harass, and embarrass" him so he would cease to represent Betsy Aubrey.

Defendants filed a joint general denial answer and asserted several counterclaims. Also, Defendants filed (1) a November 24, 2015 motion to dismiss pursuant to section 27.003 of the TCPA, contending this suit "is merely a response to Defendants' right to free speech or right to petition"; (2) October 2016 affidavits asserting indigency and inability to pay court costs; and (3) an April 28, 2017 motion to recuse trial court judge Donald Cosby based on personal bias, prejudice, and questionable impartiality.

Tobolowsky filed an April 15, 2016 motion to require Defendants to provide security for costs pursuant to Texas Rule of Civil Procedure 143. The trial court granted that motion in an April 18, 2017 order that directed Defendants to provide such security within fifteen days or risk dismissal of their counterclaims with prejudice. Also, the trial judge signed a May 1, 2017 order declining to recuse himself and requesting that a judge be assigned to hear the recusal motion.

At the May 8, 2017 bench trial, Defendants did not appear or explain their absence. Tobolowsky introduced thirty-one exhibits[2] into evidence and presented witness testimony

---

[1] Following Tobolowsky's death in May 2016, Michael B. Tobolowsky, executor of the estate of Ira E. Tobolowsky, succeeded him as plaintiff. We refer to appellee as "Tobolowsky."

[2] Tobolowsky's exhibits included (1) a February 9, 2015 email from Vodicka to Tobolowsky, Betsy Aubrey, and another of Betsy's sons who was also a Tobolowsky client, Richard Buck Aubrey, describing Tobolowsky's purported "violation of Texas Penal Code 36.04" and stating "[i]mproperly influencing Judge Johnson is a criminal act and this very serious crime will be vigorously pursued"; (2) a March 20, 2015 email from

regarding how those exhibits demonstrated defamation.[3] The trial court's May 11, 2017 final judgment (1) dismissed Defendants' counterclaims with prejudice based on their failure to provide security for costs and (2) stated Tobolowsky "shall recover from Defendants, jointly and severally, actual damages for injury to Ira Tobolowsky's reputation and his mental anguish as found by the Court in the amount of $500,000.00, and . . . exemplary damages from Defendants, jointly and severally, as found by the Court, in the amount of $5,000,000.00," plus additional costs and fees.

Several weeks later, an assigned judge heard and denied Defendants' motion to recuse Judge Cosby. Vodicka then filed a "Motion to Vacate Final Judgment," contending the $5,000,000.00 exemplary damage award was "outrageous" and "without basis."

## II. Sufficiency of the evidence

Where, as here, the trial is to the bench and the trial court does not make findings of fact and conclusions of law, we imply all facts necessary to support the judgment that are supported by the evidence. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). If

---

Vodicka to Tobolowsky and Justice Mary Murphy, Presiding Judge of the First Administrative Judicial Region of Texas, describing Tobolowsky's purported "violations of Texas Penal Code Sec. 36.04 Improper Influence and upon information and belief, Texas Penal Code Sec. 36.02 Bribery" and stating "[w]e all understand the benefits to your firm through the creation of chaos"; (3) an April 21, 2015 email from Vodicka to Tobolowsky, his law partner, and Richard Buck Aubrey describing "the dozens of fraudulent misrepresentations [Tobolowsky] and his client have made together to the IRS, Wells Fargo Bank, and the courts" and stating Tobolowsky is over-charging Betsy and "may need to spend time making future plans for his business and his family if he is sent to prison for any variety of possible criminal convictions"; (4) an April 28, 2015 email from Vodicka to Tobolowsky, Betsy Aubrey, and Richard Buck Aubrey describing Tobolowsky's purported "scheme directed at the Aubrey Family LLC" and stating "[y]our clients may be ignorant to the fact you are taking advantage of them but we are not"; and (5) several 2012 emails from Steven B. Aubrey to his mother and other family members in which he accused Betsy and Richard Buck Aubrey of stealing family assets and threatened to "unleash Jihad" on Betsy and "make the rest of your life miserable, as you deserve" if she did not make "dramatic changes" in his favor regarding managing those assets.

[3] Ira Tobolowsky's son Michael Tobolowsky testified (1) reputation "was everything" to Ira Tobolowsky; (2) Defendants' intent was "to destroy [Tobolowsky's] reputation so that he wouldn't be able to have a practice anymore"; (3) Defendants published "blatant lies" about Tobolowsky in blogs, emails, and pleadings; (4) those statements harmed Tobolowsky's reputation and caused him to lose clients and income; (5) Tobolowsky earned up to $2,000.00 for "a couple hours" of work; (6) a 2015 blog Defendants published describing Tobolowsky as a "Mortgage Fraudster" "resulted in at least a loss of $500,000 or more due to legal fees that [Tobolowsky] otherwise would have been able to earn"; (7) the stress caused by Defendants' statements exacerbated Tobolowsky's arthritic condition to the point where he needed assistance with basic tasks such as putting on his socks; (8) Michael saw his father "turn away cases because of having to deal with what I'll call [Defendants'] nonsense"; and (9) although Defendants claim to be indigent, his own investigation into their finances shows they are lying.

Additionally, Michael testified,

> Q. And do you know from your investigation of all these materials whether Aubrey and Vodicka interacted when they prepared pleadings and/or correspondence?
> A. Interacted may be an understatement. Frequently one would draft it, the other would sign.
> Q. And—and would they show those documents to one another before they filed them?
> A. Sometimes.
> Q. And was there defamation contained in those sometimes pleadings, sometimes correspondence?
> A. Absolutely.

the reporter's record is filed on appeal, as it was here, implied findings may be challenged on factual and legal insufficiency grounds in the same manner "as jury findings or a trial court's [express] findings of fact." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017).

A challenge to the legal sufficiency of the evidence supporting an adverse finding on an issue for which the appellant did not have the burden of proof requires the appellant to show that no evidence supports the adverse finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). We will sustain the challenge if there is a complete absence of evidence of a vital fact, we are barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a scintilla, or the evidence conclusively establishes the opposite of a vital fact. *Dallas Nat'l Ins. Co. v. De La Cruz*, 470 S.W.3d 56, 57–58 (Tex. 2015) (per curiam). In our review, we consider the evidence in the light most favorable to the finding, credit evidence that supports the finding if a reasonable fact-finder could do so, and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *Id.* at 58. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

Actionable defamation requires (1) publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) that proximately caused damages. *Anderson v. Durant*, 550 S.W.3d 605, 617–18 (Tex. 2018). Defamation per se refers to false statements so obviously harmful that general damages may be presumed. *Id.* at 618. Statements that accuse someone of committing a crime or adversely reflect on a person's fitness to conduct his or her business or trade are defamatory per se. *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015) (orig. proceeding). General damages include noneconomic losses, such as mental anguish and loss of reputation. *Anderson*, 550 S.W.3d at 618. When harm

is presumed, a nominal sum may be awarded without proof of damages, but amounts exceeding nominal damages require evidentiary support. *Id*.

Noneconomic damages offer a pecuniary remedy for non-pecuniary harm and are not amenable to calculation with "precise mathematical precision." *Id*. Although the fact-finder has latitude in determining the award, it does not have carte blanche in deciding the matter. *Id*. (citing *Bentley v. Bunton*, 94 S.W.3d 561, 605 (Tex. 2002)). Rather, the fact-finder must award "an amount that a reasonable person could possibly estimate as fair compensation." *Id*. A damages award for mental anguish will survive a legal sufficiency challenge when the record bears "direct evidence of the nature, duration, and severity of [the plaintiff's] mental anguish, thus establishing a substantial disruption in the plaintiff['s] daily routine," or when the record demonstrates "evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Id*. at 618–19. Likewise, "evidence of loss of reputation should be more than theoretical." *Id*. at 621. Evidence that the plaintiff has lost a job or business opportunities may be evidence of loss of reputation, but only if it is connected to the defamatory statements. *Id*. Once a loss has been shown, the fact-finder has discretion to estimate the amount that will reasonably compensate the plaintiff. *Id*. Evidence assigning an actual dollar value to the injury is not required; rather, reasonable compensation is the touchstone for quantifying damages. *Id*.

In his second issue, Vodicka contends the trial court erred by "find[ing] that 'Plaintiff has proven their [sic] case of defamation per se' when Plaintiff failed to identify any statements." According to Vodicka,

> Plaintiff's [live petition] does not have the "published" "defamatory statements" as promised. It only has illusive descriptions of behavior and conduct including:
>
> "Defendants falsely accused Tobolowksy of violating criminal laws."

"Defendants defamed Tobolowsky to third parties by falsely accusing Tobolowsky of numerous violations of the Texas Rules of Professional Responsibility in writings, in public records, emails, correspondence with third parties, and/or by publishing such false statements on the internet."

"Defendants defamed Tobolowsky to third parties by falsely accusing Tobolowsky of being a mortgage fraudster in writings, in public records, emails, correspondence with third parties, and/or by publishing such false statements on the internet."

Additionally, Vodicka asserts (1) "[b]ecause Plaintiff failed to identify any statements, as a matter of law, the trial court improperly found the unidentified statements were false statements concerning Plaintiff"; (2) "[b]ecause Plaintiff refused to ever identify statements, Defendants were denied the ability to argue the truth in the statements"; and (3) "[w]ithout the identity of the statement itself, it is impossible to determine if Defendants owed a legal duty to Plaintiff or if Defendants breached that duty."

Tobolowsky's live petition listed twenty-three examples of alleged defamation, some he specifically described as "statements" and others he described as "written communications," accusations made in correspondence, or otherwise. At trial, Tobolowsky produced documents corresponding to those examples and described how Defendants' statements in those documents demonstrated defamation per se. We reject Vodicka's multiple arguments based on and pertaining to Tobolowsky's alleged failure to "identify any statements."

In his third issue, Vodicka asserts the trial court erred by "award[ing] $500,000 in actual damages when the plaintiff judicially admitted he did not suffer damages or injury." Vodicka cites Tobolowsky's November 2015 discovery responses to interrogatories and requests for production in which Tobolowsky stated (1) "[a]t this time Plaintiff does not claim he suffered financial injury" and (2) "[a]t this time, Plaintiff has not suffered any financial damages." According to Vodicka, (1) "since Plaintiff judicially admitted he had not suffered financial damages, the logical indication is that his reputation was not injured as well,"; and (2) because the record does not support injury to reputation, the trial court "abused its discretion using injury to reputation to build its actual

–6–

damages of $500,000." Also, Vodicka argues Tobolowsky failed to establish mental anguish because (1) there was no testimony that Tobolowsky's "routine had been disrupted or that he was experiencing extraordinary mental conditions" and (2) "a doctor would be needed to show any health concerns that arose from the statements."

The trial court awarded $500,000.00 in damages for "injury to Ira Tobolowsky's reputation and his mental anguish." These are noneconomic damages, which offer a pecuniary remedy for non-pecuniary harm. *See Anderson*, 550 S.W.3d at 618. Therefore, Tobolowsky's November 2015 statements that he had not suffered "financial" damages or injury at that time did not preclude those damages. The evidence (1) included testimony regarding Tobolowsky's hourly fees and (2) showed that the harm to his reputation caused him to lose clients and income and exacerbated his arthritic condition to the point where he needed assistance with basic tasks such as putting on his socks. On this record, we conclude $500,000.00 is "an amount that a reasonable person could possibly estimate as fair compensation." *Id*. at 618–19; *see also Bentley*, 94 S.W.3d at 606–07 (declining to reverse award of $150,000.00 for reputation damage where plaintiff was called "corrupt" on local radio show).

### III. Exemplary damages

Unless otherwise provided by statute, exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a); *see also id*. § 41.004(a) (exemplary damages may be awarded only if damages other than nominal damages are awarded). "Malice" means "a specific intent by the defendant to cause substantial injury or harm to the claimant." *Id*. § 41.001(7). "Clear and convincing" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*.

–7–

§ 41.001(2). "Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of: (1)(A) two times the amount of economic damages; plus (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000." *Id*. § 41.008(b). "In any action in which there are two or more defendants, an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant." *Id*. § 41.006.

Subject to section 41.008, "the determination of whether to award exemplary damages and the amount of exemplary damages to be awarded is within the discretion of the trier of fact." *Id*. § 41.010. "In determining the amount of exemplary damages, the trier of fact shall consider evidence, if any, relating to: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the net worth of the defendant." *Id*. § 41.011. In our review of an exemplary damages award, we must state our reasons for upholding or disturbing the award and "address the evidence or lack of evidence with specificity, as it relates to the liability for or amount of exemplary damages," in light of the statutory requirements. *Id*. § 41.013.

In his fourth issue, Vodicka contends the trial court erred by awarding $5,000,000.00 in exemplary damages because (1) "no evidence supports the award of actual damages"; (2) the complained-of statements "did not present the sort of dangerous conduct, nor the likelihood of serious harm, that is required to show malice"; (3) the amount awarded exceeds statutory and constitutional limits; and (4) section 41.006 "stipulates no joint & several liability for exemplary damages."

Although joint-and-several exemplary damage awards are improper, a section 41.006 complaint must be preserved in the trial court or it is waived. *Horizon Health Corp. v. Acadia*

*Healthcare Co., Inc.*, 520 S.W.3d 848, 881 (Tex. 2017). Because the record does not show Vodicka asserted this joint-and-several-damages complaint below, it presents nothing for this Court's review. *Id.*; *see also Heydari v. El-Sarabi*, No. 05-04-00794-CV, 2005 WL 1950823, at *5 n.1 (Tex. App.—Dallas Aug. 16, 2005, no pet.) (mem. op.) (error regarding section 41.006 violation can be waived).

We concluded above that the evidence supports the trial court's award of $500,000.00 in noneconomic damages. Therefore, section 41.008(b)(1)(B) limits any award of exemplary damages to an equal amount—$500,000.00. The evidence shows Vodicka engaged in a persistent, calculated campaign intended to damage Tobolowsky's reputation, without regard for truth. Those efforts damaged Tobolowsky's business and health. Thus, the evidence shows "a specific intent by the defendant to cause substantial injury or harm to the claimant." *See* CIV. PRAC. & REM. § 41.001(7); *see also Bentley*, 94 S.W.3d at 602 (evidence that defendant "hounded Bentley relentlessly and ruthlessly for months" and "carried on a personal vendetta against Bentley without regard for the truth of his allegations" showed malice); *Cummins v. Bat World Sanctuary*, No. 02-12-00285-CV, 2015 WL 1641144, at *24 (Tex. App.—Fort Worth Apr. 9, 2015, pet. denied) (mem. op.) (malice was shown by clear and convincing evidence where defendant engaged in persistent, calculated attack on plaintiff with intent to ruin plaintiff's credibility and standing in community). Although Vodicka claimed indigence in the trial court, Tobolowsky presented controverting evidence. Moreover, "the other factors that a court considers in awarding exemplary damages weigh in favor of the award." *Cummins*, 2015 WL 1641144, at *24; *see* CIV. PRAC. & REM. § 41.011. We conclude the record supports an award of $500,000.00 in exemplary damages against Vodicka.[4] *See* CIV. PRAC. & REM. § 41.008(b).

---

[4] Vodicka does not contend section 41.008's allowed amounts are unconstitutional. Because we conclude section 41.008's limits are applicable, we need not reach Vodicka's argument that the $5,000,000.00 exemplary damage award is unconstitutional.

## IV. TCPA motion to dismiss

The TCPA provides a party with a means to obtain a relatively expedited dismissal of a lawsuit that is meritless under its provisions. *See id.* §§ 27.001–.011; *Lipsky*, 460 S.W.3d at 586. The statute requires a defendant seeking its protections to move for dismissal and obtain a hearing on the motion within certain clearly defined periods. *Braun v. Gordon*, No. 05-17-00176-CV, 2017 WL 4250235 at *3 (Tex. App.—Dallas Sept. 26, 2017, no pet.) (mem. op.). The failure to meet these requirements results in the defendant forfeiting the statute's protections. *Id.* Generally, a hearing on a TCPA motion to dismiss "must be set not later than the 60th day after the date of service of the motion" and the trial court must rule on the motion "not later than the 30th day following the date of the hearing." CIV. PRAC. & REM. §§ 27.004(a), 27.005(a).

In his first issue, Vodicka complains the trial court "denied Defendants' statutory right to have their [TCPA] motion to dismiss heard and ruled upon." According to Vodicka, the trial court "denied setting Defendants' motion for hearing" and "because there was no hearing, there was no ruling." Nothing in the record shows the trial court "denied setting" the TCPA dismissal motion for hearing, nor does the record show Defendants objected regarding the lack of a timely hearing on that motion or asserted any complaint in the trial court pertaining to section 27.004(a). We conclude Vodicka's first issue presents nothing for this Court's review. *See Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 874 (Tex. 2014) (complaint of lack of timely TCPA hearing not preserved for review where record did not show objection in trial court), *disapproved on other grounds by Hersch v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *see also Braun*, 2017 WL 4250235 at *3 (movant forfeits TCPA's protections by "fail[ing] in its responsibility to obtain a timely hearing on the motion to dismiss").

## V. Security for costs

"A party seeking affirmative relief may be ruled to give security for costs at any time before final judgment." TEX. R. CIV. P. 143. "If such rule be entered against any party and he failed to comply therewith on or before twenty (20) days after notice that such rule has been entered, the claim for affirmative relief of such party shall be dismissed." *Id*. Generally, "[a] party who files a Statement of Inability to Afford Payment of Court Costs cannot be required to pay costs." TEX. R. CIV. P. 145(a). But "[w]henever evidence comes before the court that the declarant may be able to afford costs, . . . the court may require the declarant to prove the inability to afford costs." *Id*. 145(f)(4).

In his fifth issue, Vodicka asserts the trial court erred by dismissing Defendants' counterclaims with prejudice "when, as a matter of law, the trial court's order . . . violated Tex. R. Civ. Proc. 143 and 145." Vodicka argues (1) "[t]he trial court's order requiring payment of costs was legally insufficient as it imposed a 15-day deadline for payment" when rule 143 "stipulates compliance within 'twenty (20) days after notice,'" and (2) Defendants' affidavits of indigency "were not contested by the Clerk or even the plaintiff" and therefore "the trial court was required, by law, to accept the affidavits as truthful."

Vodicka cites no authority, and we have found none, to support his position that the errors he describes made the trial court's April 18, 2017 order "legally insufficient." At trial, Tobolowsky's evidence controverted Defendants' claims of indigency. Therefore, the trial court was not required to accept Defendants' affidavits as truthful. *See id*. 145(f)(4). Further, notwithstanding the language of the trial court's April 18, 2017 order, the trial court afforded Defendants more than twenty days to comply with the order before their counterclaims were dismissed on May 11, 2017. Therefore, any error was harmless. *See* TEX. R. APP. P. 44.1.

## VI. Recusal

"A judge must recuse in any proceeding in which: (1) the judge's impartiality might reasonably be questioned; [or] (2) the judge has a personal bias or prejudice concerning the subject matter or a party." TEX. R. CIV. P. 18b(b)(1)–(2). "An order denying a motion to recuse may be reviewed only for abuse of discretion on appeal from the final judgment." *Id*. 18a(j)(1)(A). The test for recusal under rule 18b(b) is "whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial." *Drake v. Walker*, 529 S.W.3d 516, 528 (Tex. App.—Dallas 2017, no pet.). In challenging a judge's impartiality, "the [movant's] burden is met only through a showing of bias or impartiality to such an extent that the movant was deprived of a fair trial." *Id*. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and opinions the judge forms during a trial do not necessitate recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam). "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id*.

In his sixth issue, Vodicka contends the trial court "erred in not recusing Judge Donald Cosby after clear and convincing prejudice." Defendants' recusal motion stated it was based on Judge Cosby's "lack of rulings, his application of the Court's Order, his improper scheduling of the trial and the deadlines, his tolerance of Plaintiff's egregious subpoena duces tecum, his order commanding Defendant to appear at a hearing they initially requested, his verbal threats to punish Defendants with confinement for lack of funds to pay the $500,000.00 plus in legal fees and sanctions, and his refusal to appoint counsel for Defendants as mandated by law." Those complaints are based on Judge Cosby's judicial rulings. The record does not show "deep-seated

favoritism or antagonism that would make fair judgment impossible." *See id*. We conclude the trial court did not abuse its discretion by denying the recusal motion.

## VII. Conclusion

We decide Vodicka's fourth issue in his favor, in part, and decide his remaining issues against him. We modify the trial court's judgment to reduce the amount of exemplary damages from $5,000,000.00 to $500,000.00, thus resulting in an award of $1,000,000.00 in total general and exemplary damages against Vodicka, plus additional costs and fees described in the judgment.

We affirm the judgment as modified.


/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE


170727F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRIAN E. VODICKA, Appellant

No. 05-17-00727-CV     V.

MICHAEL B. TOBOLOWSKY,
EXECUTOR OF THE ESTATE OF IRA E.
TOBOLOWSKY, Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-08135.
Opinion delivered by Justice Carlyle.
Justices Myers and Whitehill participating.

In accordance with this Court's opinion of this date, we **MODIFY** the trial court's judgment to reduce the amount of exemplary damages from $5,000,000.00 to $500,000.00. It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 6th day of May, 2019.